IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATERIALS HANDLING ENTERPRISES, INC., | ) ) | C.A. No. 20-165 Erie |
| Plaintiff, | ) ) | |
| v. | ) ) | District Judge Susan Paradise Baxter |
| ATLANTIS TECHNOLOGIES, LLC, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

**A.    Relevant Procedural History**

On June 26, 2020, Plaintiff Materials Handling Enterprises, Inc., a Pennsylvania corporation, initiated this action by filing a complaint [ECF No. 1] against Defendant Atlantis Technologies, LLC, a Michigan limited liability company, asserting claims of breach of contract (Count I) and breach of warranty of fitness for a particular purpose (Count II). Plaintiff subsequently filed an amended complaint [ECF No. 11], reasserting its original claims and adding claims of breach of warranty of workmanlike condition (Count III) and fraud in the inducement (Count IV).

On October 23, 2020, Defendant filed a motion to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief may be granted [ECF No. 14]. Plaintiff has filed a brief in opposition to Defendant's motion [ECF No. 21], and Defendant has filed a reply brief [ECF No. 22]. This matter is now ripe for consideration.

**B.     Plaintiff's Allegations**

Plaintiff is in the business of marketing and selling goods "such as conveyors, storage, and other material handling systems and ergonomic solutions" (ECF No. 11, at ¶ 2). According to the amended complaint, Defendant "designs, sells and installs goods, including a full line of case handling conveyor systems" (Id. at ¶ 3). On or about May 7, 2018, Plaintiff submitted to Defendant a request for quotation for an accumulation conveyor for one of Plaintiff's customers in Winston Salem, North Carolina ("Request for Quotation"). According to the Request for Quotation, the conveyor was to be used for handling loads of standard 48" x 40" GMA pallets, each having a maximum load of 500 pounds, to be loaded and unloaded by forklift (Id. at ¶ 11). Plaintiff alleges that Defendant "selected, designed, and quoted a conveyor system based upon the specifications communicated by [Plaintiff] and subsequently issued Quote ATL-Q8569 REV A ("the Quotation") identifying the conveyor system to be purchased" (Id. at ¶ 14). In reliance upon Defendant's representations, Plaintiff purchased the conveyor system identified in the Quotation for a total of $113,667.38 (Id. at ¶¶ 18, 20).

On or about October 19, 2018, Defendant's Sales Manager advised Plaintiff that "there is a pretty big issue. End user [Plaintiff's customer] is using a (5) board wooden pallet however it has been discovered that boards are running parallel with rollers and not able to convey" (Id. at ¶ 21). After several attempts at correcting the problem over a number of months, Defendant advised Plaintiff that it would no longer attempt any further repairs (Id. at ¶ 22). Because the conveyor did not meet the specifications set forth in the Request for Quotation, Plaintiff was ultimately obliged to refund the full purchase price of $113,667.38 to its customer (Id. at ¶¶ 25, 26). Plaintiff is now seeking to recover its loss from Defendant.

## II.    DISCUSSION

### A.    Preliminary Matters

Plaintiff's claims arise from the contract ("Contract") between Plaintiff and Defendant which, according to Plaintiff, consists of a "Request for Quotation, Quotation, and performance in reasonable reliance thereon" (ECF No. 11, at ¶ 28). The relevant portion of the Request for Quotation is reproduced in paragraph 11 of Plaintiff's amended complaint [ECF No. 11, at ¶ 11]. The Quotation is omitted from the amended complaint but has been attached as an exhibit to Defendant's motion to dismiss [ECF No. 14-3]. Because Plaintiff has identified the Quotation as part of the Contract between the parties that is the subject of this suit, the Court will consider its contents in determining the pending motion to dismiss. See MDB v. Punxsutawney Christian School, 386 F.Supp.3d 565, 590 n. 10 (W.D. Pa. 2019), citing Line Lexington Lumber & Millwork Co. v. Pa. Publishing Corp., 301 A.2d 684 (Pa. 1973) ("When a plaintiff bases [a] cause of action on a written agreement, the defendant may attach the agreement and it may be referred to for purposes of deciding a motion to dismiss or demurrer").

In addition to the Quotation, Defendant has also attached to its motion a document entitled "Terms and Conditions" [ECF No. 14-4], which Defendant claims is also part of the Contract by virtue of the last bullet point on the last page of the Quotation, which states, "All orders subject to Atlantis Technologies LLC's Standard Terms and Conditions of Sale" ("Terms & Conditions"). (ECF No. 14-3, p. 3). Plaintiff objects to the inclusion of the Terms & Conditions as part of the Contract, and contends that the Court should not consider the Terms & Conditions or their contents in its determination of Defendant's pending motion to dismiss, arguing that the Court may only consider "'undisputedly authentic document(s) that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached]

3

documents.'" (ECF No. 21, at p. 7, quoting Donohue v. Ret. Sys. of Allegheny Cty., 2018 WL 6725330, at *5 (W.D. Pa. Dec. 21, 2018), aff'd 792 Fed. Appx. 172 (3d Cir. 2019), citing Pension Benefit Guaranty Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)). Plaintiff stresses that the Terms & Conditions "are not mentioned, quoted, summarized or attached to the Amended Complaint" nor are its claims "based on" the Terms & Conditions. (Id. at p. 8).[1] Defendant counters, however, that Plaintiff's amended complaint expressly relies upon the terms of the Quotation which, in turn, expressly incorporates the Terms & Conditions by reference. Thus, Defendant contends that the Terms and Conditions are properly before the Court as part of the Contract at issue. The Court agrees.

"The Third Circuit has instructed that 'parallel agreements,' [such as the Terms & Conditions in this case], are enforceable even when contained in separate, unsigned documents referenced only by one party's terms," so long as they were properly incorporated by reference. Rave Pak, Inc. v. Bunzl USA, Inc., 2021 WL 3486937, at * 3 (D.N.J. Aug. 9, 2021), citing Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003) ("Where a buyer makes a definite and seasonable expression of acceptance of a seller's offer, a contract is formed on the seller's terms. … The seller's terms may include documents or provisions incorporated by reference into the main agreement"). A separate document is properly incorporated by reference where "[1] the underlying contract makes clear reference to [the] separate document, [2] the identity of the separate document may be ascertained, and [3] incorporation of the document will not result in surprise or hardship." Standard Bent Glass Corp., 333 F.3d at 447 (3d Cir. 2003). Furthermore, when the parties contracting are seasoned merchants, as is the case here, "[it] is

---

[1] Plaintiff also argues that Defendant "has not even attempted to authenticate the Terms and Conditions" (ECF No. 21, at p. 7); however, this objection has since been rectified by Defendant's filing of the unsworn declaration of its General Manager, Corey Canute [ECF No. 23].

4

appropriate to require [the parties] to exercise a level of diligence that might not be appropriate to expect of a non-merchant." Id. at 447 n.10. In view of this heightened level of diligence, the Court will consider the Standard Bent factors, in turn.

### 1. Reference to the Terms and Conditions and its Ability to be Ascertained

"For a separate document to be successfully incorporated by reference, the original contract must '[make] clear reference to [the] separate document,' enabling 'the identity of the separate document' to be ascertained." Rave Pak, at * 3, quoting Standard Bent, 333 F.3d at 447. This requirement has roots in common law, where a separate document needed to be identifiable "beyond all reasonable doubt" in order to be effectively incorporated by reference. See PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996) ("While a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, a party will not be bound to the terms of any document unless it is clearly identified in the agreement.").

Here, as noted earlier, the final sentence of the Quotation relied upon by Plaintiff expressly states, "All orders [are] subject to Atlantis Technologies LLC's Standard Terms and Conditions of Sale." (ECF No. 14-3, at p. 3). This reference to the Terms & Conditions is sufficiently clear to put a "seasoned merchant" on notice to exercise due diligence to obtain and review the incorporated Terms & Conditions before placing an order. See, e.g., Newark Bay Cogeneration Partnership , LP v. ETS Power Group, 2012 WL 4504475 at *8 (D.N.J. Sept. 28, 2012) (finding a similar reference within a written quotation to have "clearly and unambiguously" described the incorporated document "in such terms that its identity may be

ascertained beyond doubt") (citations omitted).[2] Plaintiff cannot escape the incorporation of the Terms & Conditions by simply ignoring them, or making no effort to ascertain them, or avoiding any reference to them. By the express language of the Quotation upon which Plaintiff relies, the Terms & Conditions are properly incorporated by reference.

### 2.   Surprise or Hardship

"Nonetheless, although a separate document may be clearly referenced, its terms might not be incorporated by reference if doing so would result in 'surprise or hardship' for the party against whom enforcement is sought." Rave Pak, at *4, citing Standard Bent, 333 F.3d at 448. "Surprise includes both a subjective element of what a party actually knew and an objective element of what a party should have known.... A profession of surprise and raised eyebrows are not enough. Instead, to carry its burden the nonassenting party must establish that, under the circumstances, it cannot be presumed that a reasonable merchant would have consented to the additional term." Standard Bent, 333 F.3d at 448 (quotation omitted). "As for hardship, courts consider 'whether the clause at issue would impose substantial economic hardship on the nonassenting party.'" Rave Pak, at *5, quoting Newark Bay, 2012 WL 4504475 at *11 (quotation omitted). "Courts may also consider industry norms and the relative sophistication of the bargaining parties when evaluating alleged surprise or hardship." Newark Bay, at *12. "The burden to demonstrate surprise or hardship falls on the nonassenting party." Rave Pak, at *5, citing Rocheux Intern. of N.J., Inc., 741 F.Supp.2d at 684 (D.N.J. 2010) (quotation omitted).

---

[2] The quotation in Newark Bay contained the following language: "This quotation is based on best efforts estimates of repairs and replacements, it is valid for 90 days and is **based on our standard terms and conditions of sale.**" Newark Bay, at *9 (emphasis added).

Here, Plaintiff has not claimed surprise or hardship at the incorporation of the Terms & Conditions, nor can it do so. It is apparent from the clear reference to the Terms & Conditions in the Quotation that Plaintiff was aware of, or as a "seasoned merchant" should have known about and reviewed, the Terms & Conditions at the time it accepted the Quotation and placed its order. Thus, Plaintiff cannot now claim surprise at the existence and content of the Terms & Conditions. Nor can Plaintiff demonstrate "substantial economic hardship" as a result of the application of the Terms & Conditions to Plaintiff's claims in this case since the Terms & Conditions are expressly incorporated as part of the Contract Plaintiff seeks to enforce.

Based on the foregoing, therefore, the Court finds that it is appropriate to consider the Terms & Conditions in determining Defendant's motion to dismiss. The Court determines further that it may do so without having to convert the motion to one for summary judgment under Rule 56, because the Terms & Conditions are part of the Quotation relied upon by Plaintiff and, thus, "'plaintiff is clearly on notice as to its contents and the need for an opportunity to refute the evidence [on summary judgment] is diminished.'" Brown v. Agway Energy Servs., LLC, 328 F.Supp.3d 464, 471 (W.D. Pa. 2018), quoting Rogan v. Giant Eagle, Inc., 113 F.Supp.2d 777, 780-81 (W.D. Pa. 2000).

Plaintiff's claims will now be considered in turn.

**B.     Count I - Breach of Contract**

Plaintiff claims that Defendant breached the Contract "by failing to provide, design and/or construct a conveyor system that performed in accordance with the specifications contained in the contract between the parties or otherwise in a commercially reasonable manner" (ECF No. 11, at ¶ 29). Defendant counters that this claim should be dismissed because it did not owe Plaintiff a duty as alleged in the amended complaint and, therefore, could not have breached

7

any such duty (ECF No. 14, at ¶ 9). Specifically, Defendant points to the following provision in the Quotation:

> Equipment is quoted based upon information provided by the Customer. Therefore, **the Customer is to determine if this equipment is suitable for the application, required needs, and product to be conveyed**.

(ECF No. 14-3 at p. 3, bullet point 3) (emphasis added). Based on this provision, Defendant argues that it was Plaintiff's duty to ensure that the equipment met its customer's specifications, not Defendant's. The Court agrees.

Pennsylvania courts apply the "plain meaning rule" of interpretation of contracts, which assumes that the intent of the parties to an instrument is "embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." Cnty. of Dauphin v. Fid. & Deposit Co., 770 F. Supp. 248, 251 (M.D. Pa.) (quotation omitted), aff'd, 937 F.2d 596 (3d Cir. 1991). "A court's purpose in examining a contract is to interpret the intent of the contracting parties, as objectively manifested by them." Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994). First, the court must make the preliminary inquiry as to whether the contract before it is ambiguous. Id. A contract provision is ambiguous if it is susceptible of two reasonable alternative interpretations. Id. If the contract is determined to be ambiguous, then the interpretation of the contract is left to the factfinder, to resolve the ambiguity in light of extrinsic evidence. Id. Where, however, the written terms of the contract are not ambiguous and can only be read one way, the court will interpret the contract as a matter of law. Id.; Freedom Props., L.P. v. Lansdale Warehouse, Inc., 2007 WL 2254422, at *3 (E.D. Pa. Aug. 2, 2007) ("Courts can resolve contract disputes on a motion to dismiss if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the

interpretation of an unambiguous contract is a matter of law for the court.") (internal quotations omitted).

Here, despite Plaintiff's arguments to the contrary, the above-quoted provision of the Quotation is straightforward and leaves no room for ambiguity. It expressly placed the burden on Plaintiff to ensure that the equipment met its needs and specifications. Thus, there is nothing left for a factfinder to interpret.

Nonetheless, Plaintiff contends that Defendant's argument improperly relies solely upon the terms of the Quotation and ignores the terms of the Request for Quotation, which Plaintiff asserts is part of the Contract.[3] According to Plaintiff, "the Court must accept [its] allegations are true, and those allegations are that the contract between the parties included the Request for Quotation and Quotation...." (ECF No. 21, at p. 11). In other words, Plaintiff is essentially arguing that, because it alleges that the Request for Quotation is part of the Contract between the parties, it must be so for purposes of determining Defendant's motion to dismiss. However, just because Plaintiff's allegations include the Request for Quotation as part of the Contract does not necessarily make it so on a motion to dismiss. In ruling on a motion to dismiss, we take the non-moving party's factual, but not legal, assertions to be true." New England Interconnect Systems, Inc. v. AEES, Inc., 2010 WL 5173268 at *3-4 (W.D. Pa. Dec. 14, 2010). What constitutes a contract is a matter of law, independent of Plaintiff's factual allegations. See Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479, 854 A.2d 425, 433 (Pa.2004) ("Determinations as to contract formation and what documents evidence the parties' agreements are made as a matter of law").

---

[3] Ironically, Plaintiff does the opposite by placing primary reliance upon the terms of its Request for Quotation while essentially ignoring the terms of the Quotation and denying the applicability of the Terms & Condition incorporated therein. Unfortunately for Plaintiff, it bet all of its money on the wrong horse.

In contracts such as the one at issue in this case, "the price quotation constitutes an offer if it sets forth sufficient detail and a contract can be formed by acceptance of its terms. The request to proceed constitutes the acceptance. The initial request for quotation is not an offer and does not provide the terms of the contract." Marjam Supply Co. v. BCT Walls & Ceilings, Inc., 2003 WL 21497515, at *3 (E.D. Pa. June 6, 2003) (internal citation omitted) (finding that, "[a]lthough {plaintiff] initially requested a quotation for 12 gauge, 3 inch flange material, [defendant] did not provide a quotation for that size" and so "[defendant] did not contract to provide 12 gauge, 3 inch flange studs and [plaintiff] is not entitled to damages resulting from [defendant's] failure to provide them"). The same principle applies here.

The Quotation provided by Defendant in response to Plaintiff's Request for Quotation contained intricate details of the conveyor system that was being offered at the stated price. In addition, Defendant's Terms & Conditions that were incorporated by reference in the Quotation states, in clear and unambiguous terms, that:

> The sales contract incorporating these terms and conditions [i.e., the Quotation] becomes a binding contract on the terms set forth herein, when it is accepted by acknowledgement or commencement of performance. **This contract can be accepted only on the exact terms set forth herein ... and no terms are in any manner whatsoever additional to or different from those set forth herein shall become a part of or in any way alter this contract** without the express written consent of [Defendant].

(ECF No. 14-4, at ¶ 1) (emphasis added). Thus, according to the express terms of the Quotation, and the incorporated Terms & Conditions, it was incumbent upon Plaintiff to review the details contained in the Quotation to ensure that the equipment being offered would meet its customer's needs and specifications, before accepting the Quotation and ordering the equipment, as described. Plaintiff's attempts to place this burden upon Defendant is unfounded, and its breach of contract claim will be dismissed, accordingly.

### C.     Count II – Breach of Warranty of Fitness for a Particular Purpose

Plaintiff alleges that Defendant's "failure to design and construct a conveyor system able to transport Standard GMA Pallets or otherwise operate with the load info contained in the Request for Quotation rendered the conveyor system unfit for its known particular purpose" (ECF No. 11, at ¶ 34). Defendant argues that any implied warranty of fitness for a particular purpose is expressly disclaimed in the Terms & Conditions and, thus, Plaintiff's claim for breach of such warranty should be dismissed. The Court agrees.

The Terms & Conditions contains the following warranty provision, in relevant part:

> Limited Warranty, Remedy, Disclaimer: ATLANTIS warrants that for a period of one year from the date of delivery equipment manufactured by ATLANTIS shall be free of defects in materials and workmanship under normal use and service, and provided the equipment is installed, operated and maintained in accordance with instructions supplied by ATLANTIS. THIS LIMITED WARRANTY IS ATLANTIS'S SOLE AND EXCLUSIVE WARRANTY.
>
> *          *          *
>
> THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES. WHETHER ORAL, WRITTEN, EXPRESS, IMPLIED OR STATUTORY, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WILL NOT APPLY.

(ECF No. 14-4, at ¶ 4).

Under Pennsylvania law, a seller is allowed to disclaim warranties for merchantability and fitness for a particular purpose as part of a written sales agreement, and this is routinely done through a seller's terms and conditions. See, e.g., Norfolk Southern Ry. Co. v. Power Source Supply, Inc., 2008 WL 2884102, at *6 (W.D. Pa. Jul. 25, 2008) (holding disclaimer of warranties valid and enforceable); American Atelier, Inc. v. Materials, Inc., 675 F. App'x 149, 152 n.1 (3d Cir. Jan. 18. 2017) (upholding the district court's dismissal of a claim for breach of the implied

11

warranty of fitness for a particular purpose based upon an express disclaimer of that warranty in the contract at issue). Disclaimers of implied warranty are governed by Pennsylvania's version of Article 2 of the Uniform Commercial Code ("the U.C.C."). 13 Pa.C.S.A. § 2316(b) states, in pertinent part:

> (b) **Implied warranties of merchantability and fitness.** - ... to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description of the face thereof."

The Uniform Commercial Code defines conspicuous as:

> (10) "Conspicuous." With reference to a term, means so written, displayed or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (i) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size.
> >
> > (ii) Language in the body of a record or display in larger type than the surrounding text, in contrasting type, font or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

13 Pa. C.S.A. § 1201(b)(10).

In applying sections 2316(b) and 1201(b)(1) courts examine the following factors to determine if a reasonable person should have noticed a warranty disclaimer including: "1) the disclaimer's placement in the document, 2) the size of the disclaimer's print, and 3) whether the disclaimer was highlighted by being printed in all capital letters or in a type, style, or color

different from the remainder of the document." Borden Inc. v. Advent Ink Co., 701 A.2d 255, 264 (Pa. Super Ct. 1997).

Here, as noted, the disclaimer is contained in the Terms & Conditions and is set apart from its surrounding text by appearing in all capital letters. Though the font size of the Terms & Conditions is much smaller than that of the Quotation of which it is made part, the conspicuous character of the disclaimer is not diminished in any way, since it is the immediately surrounding text by which its conspicuousness is measured. See Vartek, LLC v. Axiall, LLC, 2019 WL 1316415 (W.D. Pa. Mar. 22, 2019) (finding warranty disclaimer language conspicuous because it appeared in capitalized letters, thereby setting it apart from surrounding type, even though disclaimer appeared in one-sixteenth font). Thus, the disclaimer effectively forecloses Plaintiff's claim of breach of implied warranty of fitness for a particular purpose, and such claim will be dismissed.

### D. Count III – Breach of Warranty of Workmanlike Condition

Plaintiff's claim of "breach of warranty of workmanlike condition" is an anomaly. It is unclear whether such a warranty is claimed to have been express or implied, and it is even more unclear what the precise nature of such a warranty is. Although Pennsylvania law has recognized an implied warranty of workmanlike performance in the context of service contracts, see Delaware, Lackawaxen and Stourbridge Railroad Company v. Star Trak, Inc., 2018 WL 5296292, at *3 (M.D. Pa. Oct. 25, 2018) ("Pennsylvania federal and state courts have previously recognized on several occasions that all service contracts—not just residential construction contracts—may include an implied warranty that services will be performed in a reasonable and workmanlike manner") (listing cases), the Court is unaware of any Pennsylvania cases that have

recognized such a warranty in the context of a contract for the sale of goods. Indeed, none has been cited by either party.

Reviewing the crux of Plaintiff's claim, it appears that the warranty upon which Plaintiff's claim is based is in the nature of an implied warranty of merchantability, as Plaintiff alleges that "the conveyor system provided by [Defendant] failed to convey industry-standard materials, including, but not limited to, Standard GMA Pallets." (ECF No. 11, at ¶ 38). Alternatively, Plaintiff's claim may simply be a recasting of its breach of implied warranty of fitness for a particular purpose claim, as argued by Defendant, since Plaintiff also alleges that the conveyor system "was defective and did not work properly" (i.e., in accordance with Plaintiff's specifications). In either case, such claim is barred by the disclaimer of warranties provision contained in the Terms & Conditions, as discussed above. As a result, this claim will be dismissed.

### E.     Count IV – Fraudulent Inducement

Plaintiff's final claim alleges that Defendant misrepresented that "the conveyor to be purchased by [Plaintiff] could convey the load information specified in the Request for Quotation in a commercially reasonable manner by providing a Quotation with a specified conveyor ... in order to induce [Plaintiff] into entering into the contract and completing the sale of the conveyor system." (ECF No. 11, at ¶¶ 42, 44). Defendant has moved to dismiss this claim, arguing, *inter alia*, that it is barred under the gist of the action doctrine.

Under Pennsylvania law, "the gist of the action doctrine provides that a tort claim 'based on [a] party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action ... although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.'" Downs v. Andrews, 639 F.

14

App'x 816, 819 (3d Cir. 2016), quoting Bruno v. Erie Ins. Co., 106 A.3d 48, 53 (Pa. 2014). To evaluate whether the gist of the action doctrine applies, a court must identify the duty breached, because "the nature of the duty alleged to have been breached ... [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." Bruno, 106 A.3d at 68. "In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort ... is not controlling." Id.

In eToll Inc. v. Elias/Savion Adv. Inc., 811 A.2d 10 (Pa.Super.2002), the Pennsylvania Superior Court explained the sometimes blurred distinction: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id. at 14. The Court then offered examples, noting that other courts have held that the gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. eToll, 811 A.2d at 19 (internal citations and quotations omitted).

Here, Plaintiff argues that it "is not claiming that [Defendant] falsely represented that it would perform under the contract, but instead that it falsely represented that the product [Plaintiff] was to purchase complied with the specifications provide by [Plaintiff] to [Defendant]." (ECF No. 12, at p. 20). Conceptually, this is a distinction without a difference. According to Plaintiff's allegations, Defendant's "performance" of the contract was intertwined and/or dependent upon its provision of a conveyor system that met Plaintiff's specifications. So,

15

despite Plaintiff's effort to claim otherwise, its "fraudulent inducement" claim here is, essentially, a claim that Defendant breached its alleged obligations under the contract.[4] See, e.g., Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103-104 (3d Cir. 2001) ("if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort"); Caudill Seed & Warehouse Co. v. Prophet 21, Inc., 123 F.Supp.2d 826, 833-34 (E.D. Pa. 2000) (plaintiff's allegation that defendant's claim that software would work, breached when it did not work, was fraud was mere restatement of breach claim). As such, Plaintiff's fraud claim is subject to the bar of the gist of the action doctrine and will be dismissed.

 An appropriate Order follows.

---

[4] Plaintiff attempts to equate its claim with the claim in Air Products and Chems., Inc. v. Eaton Metal Prods. Co., 256 F.Supp.2d 329 (E.D. Pa. 2003), which was found to be outside the reach of the gist of the action doctrine. The claim in Air Products, however, was that the defendant fraudulently induced the plaintiff to enter a service contract by falsely representing that it had the proper certifications to provide the services required under the contract. Id. at 342. Here, Plaintiff does not claim that Defendant falsely represented its qualifications or expertise to provide the conveyor system at issue. Instead, it claims that Defendant allegedly "misrepresented that its products complied with the requested specifications to be sold under the contract." (ECF No. 21, at p. 19). Thus, the Air Products case is inapposite.